1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MARIEE GARCIA, individually and on behalf of all other persons similarly situated,

                    Plaintiff,

          v.

SIGNET JEWELERS LIMITED and STERLING JEWELERS INC.,

                    Defendants.

Case No.:    2:25-cv-6358

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Mariee Garcia ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Defendant Signet Jewelers Ltd. ("Signet") and Sterling Jewelers Inc. ("Sterling") (together with Signet, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of her counsel, and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      The jewelry market is booming. Last year, the revenue generated in this market in the United States alone is estimated at nearly $366.80 billion.

2.      Defendants seek to carve out its own share of this hypercompetitive market by offering perpetual "sales" and discounted prices through its online e-commerce store.

3.      It is no secret that consumers actively seek out bargains and discounted items when making purchasing decisions. Retailers, including Defendants, are well aware of consumers' susceptibility to such perceived bargains. Products perceived by consumers to be discounted, however, are not always actual bargains. In an effort to give off the appearance of a bargain, Defendants intentionally mislead consumers as to the quality and value of the merchandise available on its website (the "Products") through its deceptive sales tactics.

4.      When consumers visit Defendants' online store, they are shown purported sale prices on Defendants' Products:

**Figures 1 & 2:**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19





20    5.    But Defendants' purported sales are, in reality, anything but.

21   Defendants employ a deceptive strike-through price scheme to deceive consumers

22   into thinking they are receiving a bargain, when they in fact are not.  Such findings

23   were confirmed through the investigation of counsel, including through historical

24   price tracking.

25    6.    It is well established that false "reference" pricing violates state and

26   federal law.  Nonetheless, Defendants employ inflated, fictitious reference prices for

27   the sole purpose of increasing its sales.  Defendants engage in this deceptive practice

28

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    2

to deceive consumers, including Plaintiff, into believing they are receiving a bargain on their online purchases to induce them into making a purchase they otherwise would not have made.

7.     As a direct and proximate result of Defendants' false and misleading sales practices, Plaintiff and members of the Class, as defined herein, were induced into purchasing the Products under the false premise that they were of a higher grade, quality, or value than they actually were.

8.     Plaintiff seeks relief in this action individually, and on behalf of all purchasers of the Products for violations of the California Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, fraud, and unjust enrichment.  Through this action, Plaintiff seeks to enjoin Defendants from its false and deceptive sales practices, and Plaintiff seeks to obtain actual and statutory damages, restitution, injunctive relief, and reasonable attorneys' costs and fees.

## PARTIES

9.     Plaintiff Mariee Garcia is an individual consumer who, at all times material hereto, was a citizen of California and resident of Rancho Palos Verdes, California.

10.     Ms. Garcia made multiple purchases from Defendants' e-commerce website, including a Cubic Zirconia Helix Stud 14K Yellow Gold - 18G 8MM (the "Earring") and a Heart Bracelet Black/White Diamonds Sterling Silver (the "Bracelet") (collectively the "Plaintiff Purchased Products").  Ms. Garcia purchased the Earring on or about December 27, 2024, for a purported sale price of $59.99. The Earring Ms. Garcia purchased displayed a purportedly original, strike-through price of $99.99, representing that Plaintiff would "Save $40.00 (40%)" versus the Earring's usual cost.  Ms. Garcia purchased the Bracelet on or about February 13, 2025, for a purported sale price of $89.99.  The Bracelet Ms. Garcia purchased

displayed a purportedly original, strike-through price of $179.99, representing that Plaintiff would "Save $90.00 (50%)" versus the Bracelet's usual cost.  Before purchasing the Plaintiff Purchased Products, Ms. Garcia reviewed information about the Plaintiff Purchased Products, including Defendants' representations that the Plaintiff Purchased Products were being offered at a discounted sale price, including but not limited to that the Plaintiff Purchased Products have a "new lower price," representing that consumers "save $X," "or "X%," and displaying a strikethrough reference price.  When purchasing the Plaintiff Purchased Products, Ms. Garcia also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representation and warranties by Defendants that the Plaintiff Purchased Products were ordinarily offered at a higher price.

11.    Ms. Garcia relied on Defendants' false, misleading, and deceptive representations and warranties about the Plaintiff Purchased Products in making her decision to purchase the Plaintiff Purchased Products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased the Plaintiff Purchased Products, or would not have paid as much for the Plaintiff Purchased Products, had she known Defendants' representations were not true.  Defendants' representations about its Products are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.  Defendants' Products are seldom offered at the higher, strikethrough reference price, and only for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

12.    Had Ms. Garcia known the truth—that the representations she relied upon in making her purchase were false, misleading, and deceptive—she would not have purchased the Plaintiff Purchased Products or would have paid less for the Plaintiff Purchased Products.  Ms. Garcia did not receive the benefit of her bargain,

because Defendants' Plaintiff Purchased Products were not of the represented quality and value.

13.    Defendant Signet Jewelers Limited is a stock corporation organized under the laws of Bermuda headquartered in Ohio.  Defendant Signet is the parent company of numerous jewelry companies, including Sterling Jewelers, Kay Jewelers, Jared, and Zales, among others.  Defendant Signet, either directly or through its subsidiaries, manufactures, markets, and advertises and distributes its Products throughout the United States, including California.  Defendant Signet manufactured, marketed, and sold the Products during the relevant Class Period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Products were primarily or exclusively carried out by Defendant, either directly or through its subsidiaries.

14.    Defendant Sterling Jewelers Inc. is a Delaware corporation headquartered in Akron, Ohio.  Defendant Sterling is a wholly-owned subsidiary of Defendant Signet.  Defendant Sterling is the parent company of several jewelry companies, including Kay Jewelers.  Defendant Sterling, either directly or through its subsidiaries, manufactures, markets, and advertises and distributes its Products throughout the United States, including California.  Defendant Sterling manufactured, marketed, and sold the Products during the relevant Class Period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Products were primarily or exclusively carried out by Defendant, either directly or through its subsidiaries.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than the Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

16.     This Court has personal jurisdiction over the parties because Plaintiff resides in California, is a California citizen, and submits to the jurisdiction of the Court.  Further, Defendants have, at all times relevant hereto, systematically and continually conducted business in California, including within this District, and intentionally availed itself of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of its Products to residents within this District and throughout California.  Additionally, Plaintiff purchased one of Defendants' Products in California.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District and a substantial portion of the events giving rise to the cause of action occurred in this District.  Plaintiff purchased the Plaintiff Purchased Products and suffered her primary injury in this District.

## **FACTUAL BACKGROUND**

18.     Defendants manufacture, market, sell, and distribute their Products throughout the United States, including California, through its online e-commerce store, including under the brands of popular jewelry retailers, such as Kay and Jared.

### ***State And Federal Pricing Guidelines***

19.     California law provides clear guidelines as to permissible and unlawful sales tactics:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                          6

stated in the advertisement.

Cal. Bus. & Prof. Code § 17501.

20.     Additionally, California law expressly prohibits making false or misleading statements of fact "concerning reasons for, existence of, or amounts of price reductions." *See* Cal. Civ. Code § 1770(a)(13).

21.     The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics. *See* 16 C.F.R. § 233.

22.     The FTC provides the following guidance on former price comparisons:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

23.     The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the**

1    **purpose of establishing a fictitious higher price on which a deceptive**

2    **comparison might be based**." 16 CFR § 233.1(b) (emphasis added).

3          24.    The FTC also provides retailers with guidance as to retail price

4    comparison:

5                      Another commonly used form of bargain advertising is to
                       offer goods at prices lower than those being charged by
6                      others for the same merchandise in the advertiser's trade
                       area (the area in which he does business). This may be
7                      done either on a temporary or a permanent basis, but in
                       either case **the advertised higher price must be based**
8                      **upon fact, and not be fictitious or misleading.**
9                      Whenever an advertiser represents that he is selling below
                       the prices being charged in his area for a particular article,
10                     he should be reasonably certain that the higher price he
                       advertises does not appreciably exceed the price at which
11                     substantial sales of the article are being made in the area -
                       that is, a sufficient number of sales so that a consumer
12                     would consider a reduction from the price to represent a
                       genuine bargain or saving.
13

14

15

16    16 C.F.R. § 233.2(a) (emphasis added).

17          25.    Essentially, federal and state law provides that sales practices should be

18    offered in good-faith and accurately reflect the price at which (1) either the products

19    were formerly sold, or (2) comparable products are sold in the market. Defendants'

20    sales practices do neither.

21    ***<u>Defendants' Deceptive Sales Practices</u>***

22          26.    Defendants sell their Products through its e-commerce website.

23          27.    In an effort to increase sales, Defendants engage in a pervasive online

24    marketing scheme to artificially inflate the prices of its Products for the sole purpose

25    of marking them at a discounted sale price. Defendants are aware that consumers

26    typically lack material information about a Product and often rely on information

27

28

1  from sellers when making purchasing decisions, especially when a Product's quality

2  or value is difficult to discern.[1]

3       28.    Defendants have multiple methods of deceiving consumers into

4  believing that they are receiving a bargain on the Products they purchase through

5  Defendants' online store.

6       29.    First, Defendants utilize a fictitious strikethrough reference price

7  accompanied by a purported savings percentage.  Next to the fictitious reference

8  price is a lower purported sale price.  Defendants further warrant to consumers that

9  they save "XX% off" their purchase and that such Products are on sale:

10  **Figure 2:**



23       30.    These representations fall squarely into the misleading pricing practice

24  discussed in 16 C.F.R. § 233.1(a) – fictitious former pricing.  For example, the

---

[1] *Information and Consumer Behavior*, Phillip Nelson, Journal of Political Economy 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

Bracelet that Plaintiff purchased was represented as marked down from an "original" price of "$179.99" to a "sale" price of "$89.99" (a "50%" discount) at the time Plaintiff purchased it. But as Plaintiff's counsel has confirmed through historical price tracking and through available internet archives, Defendants' Products are seldom offered at the higher, strikethrough reference price. For the rare instances in which they are offered at full price, it is only for a brief period, and only for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

31.    Indeed, Defendants' prices were advertised at a "sale" price, and not advertised at the higher "original" price, for extended periods of time: the Earring had consistently been listed at a "sale" price between at least December 16, 2023 and May 5, 2025, and the Bracelet had consistently been listed at a "sale" price since between at least January 20, 2025 and May 5, 2025. This was confirmed by Plaintiff's counsel using internet archives.

32.    These are not "compare" or "MSRP" pricing practices, because consumers have no "comparative" or "reference "price against which to compare Signet's Products. Signet does not request consumers "compare" the savings. They simply state "Sale," accompanied by a strikethrough former price, and a purported savings percentage. Further, no branding is readily apparent on Defendants' Product pages outside of the websites' specific in-house banding. Thus, consumers cannot even reasonably compare Defendants' advertised former prices against comparable offerings.

33.    In short, Defendants' sales tactics are not offered in good faith and are made for the sole purpose of deceiving and inducing consumers into purchasing Products they otherwise would not have purchased.

34.     Defendants' Products are seldom offered at the higher, strikethrough reference price, and only for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.[2]

35.     Defendants' advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiff's purchases.

36.     Plaintiff was harmed as a direct and proximate result of Defendants' acts and omissions.

37.     Defendants commit the same unfair and deceptive sales practices for all of its Products.

38.     Plaintiff and members of the Class are not receiving the bargain or value that Defendants have misled them to believe.

## CLASS ALLEGATIONS

39.     Class Definition: Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(3), and/or (c)(4), Plaintiff brings this action on behalf of herself and other similarly situated individuals, defined as all consumers who purchased the Products during the applicable statute of limitations period (the "Class Period) in California (the "Class").

40.     Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

41.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgment.

---

[2] It is not curative to raise prices for minimal periods of time. Such pricing is still misleading because a single (or even several day) inflated price for the purpose of false reference pricing is not a bona fide offering of the product, even if some unfortunate consumers pay an inflated price.

42.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

43.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

        (a)     Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

        (b)     Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

        (c)     Whether Defendants made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public;

        (d)     Whether Plaintiff and the Class are entitled to injunctive relief; and

        (e)     Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

44.     <u>Typicality</u>: Plaintiff is a member of the Class she seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendants' Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

45.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class members she seeks to

represent; her consumer fraud claims are common to all other members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and she intends to vigorously prosecute this action.  Plaintiff has no interests which conflicts with those of the Class.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.  Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

46.    Superiority:  Class action treatment is the superior method for the fair and efficient adjudication of this controversy since individual joinder of all Class members is impracticable.  Additionally, the expense and burden of individual litigation would make it difficult or impossible for the individual Class members to redress the wrongs done to them, especially given the costs and risks of litigation as compared to the benefits that may be attained.  Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents fewer management difficulties and provides the benefit of single adjudication and comprehensive supervision by a single forum.

47.    Finally, Defendants have acted or refused to act on grounds generally applicable to the entire Class, thereby making it appropriate for this Court to grant final injunctive relief and declaratory relief with respect to the Class as a whole.

1
2
3

<u>COUNT I</u>
**Violation of Consumers Legal Remedies Act
("CLRA") Civil Code §§ 1750, *et seq.***

4      48.    Plaintiff and Class Members reallege and incorporate by reference each
5  allegation set forth above as if fully set forth herein.

6      49.    Plaintiff brings this claim individually and on behalf of members of the
7  Class against Defendants.

8      50.    This cause of action is brought pursuant to California's Consumers
9  Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

10      51.    Plaintiff and members of the Class are consumers who purchased
11  Defendants' Products for personal, family, or household purposes.  Accordingly,
12  Plaintiff and members of the Class are "consumers," as the term is defined by Cal.
13  Civ. Code § 1761(d).

14      52.    At all relevant times, Defendants' Products constituted "goods," as that
15  term is defined in Cal. Civ. Code § 1761(a).

16      53.    At all relevant times, Defendants were each a "person," as that term is
17  defined in Cal. Civ. Code § 1761(e).

18      54.    At all relevant times, Plaintiff's purchases of Defendants' Products, and
19  the purchases of other Class members, constituted "transactions," as that term is
20  defined in Cal. Civ. Code § 1761(e).

21      55.    The conduct alleged in this Complaint constitutes unfair methods of
22  competition and unfair and deceptive acts and practices for the purposes of the
23  CLRA, and the conduct was undertaken by Defendants in transactions intended to
24  result in, and which did result in, the sale of goods to consumers.

25      56.    The policies, acts, and practices described in this Complaint were
26  intended to and did result in the sale of Defendants' Products to Plaintiff and the
27  Class.  Defendants' practices, acts, policies, and course of conduct violated the
28  CLRA § 1750 *et seq.*, as described above.

57.    Defendants advertised goods or services with intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9).

58.    Defendants made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of California Civil Code § 1770(a)(13).

59.    Defendants violated California Civil Code §§ 1770(a)(9) and (a)(13) by representing that its Products were on sale or "% off," representing that consumers would "save $X," and displaying a strikethrough reference price.

60.    Plaintiff and members of the Class suffered injuries caused by Defendants' misrepresentations because (a) Plaintiff and members of the Class would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiff and members of the Class paid a price premium due to the mislabeling of Defendants' Products; and (c) Defendants' Products did not have the level of quality or value as promised.

61.    Wherefore, Plaintiff seeks injunctive relief only for this violation of the CLRA.

## COUNT II
### Violation of False Advertising Law
### ("FAL") Business & Professions Code §§ 17500, *et seq.*

62.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

63.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

64.    California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or

---

performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

65. California's FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." *See* Cal. Bus. & Prof. Code § 17501.

66. Defendants violated California's FAL by representing that its Products were on sale or "% off," and displaying a strikethrough reference price. Defendants never offered the Products at the advertised strike-through price. Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

67. Defendants' actions in violation of § 17500 were false and misleading such that the general public was likely to be deceived.

68. As a direct and proximate result of these acts, consumers have been and are being harmed. Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiff and members of the Class would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiff and members of the Class paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality or value.

69. Plaintiff brings this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective and disclosures to consumers. Plaintiff and members of the Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of its

1    deceptive practices; (c) interest at the highest rate allowable by law; and (d) the

2    payment of Plaintiff's attorneys' fees and costs.

## COUNT III
### Violation of Unfair Competition Law
### Business & Professions Code §§ 17200, *et seq.*

70.    Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

71.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

72.    Defendants are subject to the UCL, Bus. & Prof. Code § 17200 *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for violations.

73.    "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

74.    Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

75.    Defendants have violated the UCL's "unlawful prong" as a result of its violations of the CLRA, FAL, and federal regulations as described herein.

76.    Throughout the Class Period, Defendants committed acts of unfair competition, as defined by § 17200, by representing that its Products were on sale or "% off," and displaying a strikethrough reference price.  Defendants never sold its Products at the advertised strikethrough price in good faith.  Such Products were

only listed at the strikethrough price for minimal periods of time and only for the purpose of representing them on sale later. Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

77. As detailed above, the CLRA prohibits a business from "[a]dvertising goods or services with intent to not sell them as advertised." Cal. Civ. Code § 1770(a)(9).

78. Further, the CLRA prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(13).

79. California law also expressly prohibits false reference price schemes. Specifically, the FAL provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

80. Federal regulations also provide:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    18

a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

81.    The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith - and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**."  16 C.F.R. § 233.1(b) (emphasis added).

82.    The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business).  This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.** Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

83.     As described herein, the alleged acts and practices resulted in violations of federal and state law.

84.     Defendants' misrepresentations and other conduct, described herein, violated the "unfair prong" of the UCL because the conduct is substantially injuries to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' conduct is unfair in that the harm to Plaintiff and members of the California Subclass arising from Defendants' conduct outweighs the utility, if any, of those practices.

85.     Defendants' practices as described herein are of no benefit to consumers, who are tricked into believing that the Products are of a higher grade, quality, worth, and/or value than they actually are.  Defendants' practice of injecting misinformation into the marketplace about the value of its Products is unethical and unscrupulous, especially because consumers trust companies like Defendants to provide accurate information about their Products.  Taking advantage of that trust, Defendants misrepresent the value of its Products to increase its sales.  Consumers reasonably believe that Defendants are an authority on the value of its Products and therefore reasonably believe Defendants' representations that its Products are of a higher grade, quality, worth, and/or value than they actually are.

86.     Defendants' conduct described herein violated the "fraudulent" prong of the UCL by representing that the Products were of a higher grade, quality, worth, and/or value, when in fact they were not.

87.     Plaintiff and members of the Class are not sophisticated experts with independent knowledge of the value of Defendants' Products, and they acted reasonably when they purchased the Products based on their belief that Defendants' representations were true.

88.     Defendants knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

89.     As a direct and proximate result of these acts, consumers have been and are being harmed.

90.     Defendants' violations of the UCL entitle Plaintiff and the class members to injunctive relief and full restitution.

91.     Plaintiff and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

92.     Absent injunctive relief, Defendants will continue to injure Plaintiff and class members. Defendants' conduct and omissions of material fact are ongoing. And, even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendants yet evades review.

## COUNT IV
### Fraud

93.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

95.     As discussed above, Defendants failed to disclose material facts about its sales practices, including that its sale prices were the normal prices at which the Products were typically sold, that its strikethrough prices were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

96.     These omissions made by Defendants, as described above, upon which Plaintiff and members of the Class reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class to purchase the Products.

97.     The fraudulent actions of Defendants caused damage to Plaintiff and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## COUNT V
### Unjust Enrichment

98.     Plaintiff and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

99.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

100.    Plaintiff and members of the Class conferred a benefit on Defendants by purchasing the Products and by paying a price premium for them.

101.    Defendants have knowledge of such benefits.

102.    Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are on sale or "% off," and displaying a strikethrough reference price.  These misrepresentations caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

103.    Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class Members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Class, prays for judgment as follows:

(a)  Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class Members;

(b)  An order declaring Defendants' conduct violates the statutes referenced herein;

(c)  Entering preliminary and permanent injunctive relief against Defendants, directing Defendants to correct its sales practices and to comply with consumer protection statutes;

(d)  Awarding monetary damages, including treble damages;

(e)  Awarding punitive damages;

(f)  Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(g)  Granting such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated:  July 11, 2025          **BURSOR & FISHER, P.A.**

By:  */s/ Philip L. Fraietta*
          Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

*Counsel for Plaintiff and the proposed Class*

1

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Philip L. Fraietta, declare as follows:

1.       I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.       The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff alleges that she resides in this District.

3.       Plaintiff alleges that she is a citizen of California and resident of Rancho Palos Verdes, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on July 11, 2025, at New York, NY.


_/s/ Philip L. Fraietta_
Philip L. Fraietta